422 June 6, 2024 No. 20

# IN THE SUPREME COURT OF THE STATE OF OREGON

Sandy CHUNG,
an individual,
and Yvonne Garcia,
an individual,
*Petitioners,*

*v.*

Ellen ROSENBLUM,
Attorney General, State of Oregon,
*Respondent.*
(SC S070965)

On petition to review ballot title filed March 21, 2024; considered and under advisement on May 7, 2024.\*

Kelly Simon, American Civil Liberties Union Foundation of Oregon, Inc., Portland, filed the petition and reply memorandum for petitioners. Also on those filings was Alicia LeDuc Montgomery.

Shannon T. Reel, Assistant Attorney General, Salem, filed the answering memorandum for respondent. Also on the memorandum were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Duncan, Garrett, DeHoog, Bushong, James, and Masih, Justices.\*

DEHOOG, J.

The ballot title is referred to the Attorney General for modification.

_____

\* Flynn, C.J., did not participate in the consideration or decision of this case.

**DEHOOG, J.**

Petitioners seek review of the Attorney General's certified ballot title for Initiative Petition 54 (2024) (IP 54), contending that the summary does not comply with the requirements set out in ORS 250.035(2)(d). We review the ballot title to determine whether it substantially complies with those requirements. *See* ORS 250.085(5) (setting out that standard). For the reasons explained below, we refer the ballot title for IP 54 to the Attorney General for modification of the summary.

## I.   OVERVIEW OF IP 54

We begin with an overview of IP 54, a copy of which is attached as an Appendix. IP 54 would enact an "Oregon Crimefighting Act," which, among other provisions, would change current law that applies to the pretrial release of persons charged with "serious crime[s]." IP 54 defines a "serious crime" as any felony or Class A misdemeanor charged in circuit court. IP 54, Part A, § 1.a.

Part A of IP 54 contains the operative provisions relating to pretrial release. It first expressly prohibits release before arraignment of any defendant charged with a serious crime. IP 54, Part A, § 2. It next provides that, when a defendant is arraigned, the judge shall review the charges and the defendant's record, and then decide whether the defendant shall be released pending trial, based on the following required considerations: (1) the seriousness of both the charges and the defendant's criminal record, which includes, to the extent practicable, all arrests and convictions outside of Oregon; and (2) rights established in either the state or federal constitutions, including the right of a crime victim to be reasonably protected from the defendant throughout the criminal justice process, Or Const, Art I, § 43(1)(a), and to have pretrial release decisions be based on the principle of reasonable protection of the victim and the public, as well as the likelihood that the defendant will appear for trial, *id.* at (1)(b). IP 54, Part A, § 3. Also at arraignment, for any serious crime, the judge is "empowered to establish security

as to the appearance" of a defendant, "without restrictions previously imposed by statute."[1] *Id.* § 4.

Part A includes two other provisions. First, for any person arrested and charged with a serious crime in any Oregon circuit court, municipal court, or justice court, all state or local agencies "shall cooperate with and comply with any custodial hold or order associated with such person[,]" including one from any other state or territory, any federal agency, any other Oregon county, and any tribal agency. *Id.* § 5. Second, "the state shall not approve, facilitate, or recognize any name change" for any person convicted of any felony sex crime, first-degree assault, or murder in Oregon, or in any United States jurisdiction with substantially similar crimes, unless a court finds that extraordinary circumstances justify a name change. *Id.* § 6.

Part B of IP 54 provides that local governments shall have the power to criminally prohibit or restrict the following activities: public intoxication, public drinking of alcohol or use of any drug illegal under federal law, disorderly conduct, and trespassing on public property. *Id.* § 1.

Part C of IP 54 pertains to funding. It first provides that the state, through the Department of Corrections (DOC), shall reimburse each county for the cost of pretrial incarceration of persons charged with serious crimes (with related provisions). *Id.* Part C, § 1. It also provides that DOC shall provide—at the state's expense and using DOC personnel—incarceration facilities for adults in custody housed by a county, for any county jail exceeding 90 percent of its capacity for 30 days or more (and continuing until the supervisory authority confirms that the capacity problem has been resolved). *Id.* § 5. Part C also sets out a reimbursement rate for the cost of pretrial incarceration, *id.* at §§ 2 - 4, and it provides that none of the reimbursement or housing provisions described in Part C may be set off by any other funding obligation of the state to any county. *Id.* § 6.

---

[1]  As do current Oregon statutes, IP 54 uses the term "security" to mean the more commonly understood term, "bail." *See, e.g.*, ORS 135.265(1) (referring to "security amount"). In this opinion, we use the term "security release" to refer to release on bail, but we use the simpler term, "bail," to refer to the setting of a "security" amount.

If approved by the voters, IP 54 would "supersede[] all inconsistent provisions of Oregon law." *Id.* Part D. It would become effective on passage and would apply to crimes committed on or after January 1, 2025. *Id.* Part E.

## II.   PROCEDURAL BACKGROUND

The Attorney General prepared a draft ballot title for IP 54, ORS 250.065(3), and the Secretary of State circulated that ballot title for public comment, ORS 250.067(1). After considering the substantive comments received, the Attorney General modified her draft ballot title, ORS 250.067(2)(a), and certified the following ballot title to the Secretary of State:

> "**Limits pretrial release, increases state incarceration costs; requires enforcement of other jurisdictions' custodial holds/orders**

> "**Result of 'Yes' Vote:** 'Yes' vote limits pretrial release, increasing jail costs; requires enforcing other jurisdictions' custodial holds/orders; transfers county incarceration costs/duties to state in certain circumstances.

> "**Result of 'No' Vote:** 'No' vote retains current pretrial release system using risk level assessment, county/state incarceration funding system; no requirement to enforce other jurisdictions' custodial holds/orders.

> "**Summary:** Currently, arrested persons may be released before first court appearance, depending on crime charged, risk level assessment. Counties responsible for pretrial incarceration and incarceration sentences under one year. State may agree to house county inmate at county expense. Persons may legally change name unless change inconsistent with public interest.

> "Measure prohibits release of persons charged with felonies/Class A misdemeanors before first court appearance, expands judge's authority to set bail, and requires state to pay counties' pretrial incarceration costs; state/local agencies must enforce custodial holds/orders from other jurisdictions for those persons. State must house county inmates at state expense if jail exceeds established capacity threshold. Prohibits persons convicted of certain felonies from changing name. Local governments may prohibit/restrict certain activities. Other provisions."

Petitioners are electors who timely submitted comments about the Attorney General's draft ballot title for IP 54 and who are dissatisfied with the summary of the certified ballot title. *See* ORS 250.085(2) (describing who may challenge certified ballot title). We conclude, as explained below, that the summary must be modified.

## III.   DISCUSSION

The summary of a ballot title for a state measure must contain a "concise and impartial statement" not exceeding 125 words that "summariz[es] the *** measure and its major effect." ORS 250.035(2)(d). Petitioners contend that the summary in the certified ballot title for IP 54 does not comply with that standard because it neither sufficiently nor accurately describes the proposed measure's impacts, which, they contend, "will result in a total revamp of existing law and practice in several significant areas," most notably, the law governing pretrial release and bail. They relatedly identify specific aspects of both current law and IP 54 that the summary either omits or—they contend—inaccurately describes. The Attorney General responds that the summary substantially complies with ORS 250.035 (2)(d) because it uses the available limited words to both tell the voters about current law pertaining to pretrial release and then describe the substantive changes that IP 54 would make.

A.   *Comparison of Current Law to IP 54*

We first briefly summarize the relevant current law governing pretrial release, contrasted against Part A of IP 54, as that contrast relates to petitioners' arguments.

As to release before arraignment, current law textually emphasizes statewide consistency, the reduction of the reliance on security release, and the balancing of an arrested person's rights and a presumption of pretrial release against community and victim safety and the risk of failure to appear. *See* ORS 135.233(1) (presiding judge of each judicial district shall issue a pretrial release order that categorizes arrested persons and offenses in one of three ways—those subject to release on recognizance, those subject to release with special specified conditions (conditional

release), and those not eligible for release until arraignment (hold for arraignment)); ORS 135.233(2) (Chief Justice shall establish release guidelines for those pretrial release orders, with the stated purposes of providing a consistent release decision-making structure statewide, reducing reliance on the use of security, and balancing the defendant's rights and "presumption of pretrial release" against community and victim safety and the risk of failure to appear).[2] In contrast to current law, for any person arrested for a felony or Class A misdemeanor, IP 54 would prohibit prearraignment release, regardless of the type of crime charged and also regardless of any other considerations.[3]

Then, as to release decisions made at arraignment, current law requires consideration of several release criteria, including review of the defendant's prior criminal record. *See* ORS 135.230(7); (11) (setting out criteria[4]); ORS 135.230(10)

---

[2] Pursuant to those statutes, a Chief Justice Order (CJO) is in effect that establishes guidelines for the judicial district's pretrial release orders. Among other things, that CJO requires considering the categorization of the crime charged (recognizance release, conditional release, and hold for arraignment), as well as other objective, nondiscretionary, and person-based considerations, permissively including a risk level assessment. CJO 24-014 (May 22, 2024), https:// www.courts.oregon.gov/rules/ Documents/CJO_2024-014.pdf (last accessed May 30, 2024).

[3] Current law does prohibit pretrial release—and describes related decision-making procedures—for certain felonies. *See* ORS 135.240 (person charged with murder, aggravated murder, or treason not subject to release when "the proof is evident or the presumption strong" that person is guilty; setting out decision-making process as to release if those circumstances do not exist; otherwise setting out process for determining whether release shall be denied when defendant charged with violent felony and for making related determinations); *see also* Or Const, Art I, § 14 (offenses except murder and treason "shall be bailable by sufficient sureties"; "[m]urder or treason, shall not be bailable, when the proof is evident, or the presumption strong"); Or Const, Art I, § 43(1)(b) (other than murder, aggravated murder, and treason, violent felonies "shall not be bailable" when there is probable cause to believe that the defendant has committed the crime and the court finds, by clear and convincing evidence, that there is a "danger of physical injury or sexual victimization" to the victim or the public by the defendant while on release).

[4] ORS 135.230(7) lists the following "[p]rimary release criteria": the reasonable protection of the victim or public; the nature of the current charge; the defendant's prior criminal record (if any, but not defined) and whether the defendant appeared for any previously required pretrial appearance; any facts indicating the possibility of violations of law if the defendant were released without regulations; and any other facts tending to indicate that the defendant is likely to appear. ORS 135.230(11) sets out "[s]econdary" release criteria, including the defendant's employment status history and financial condition, nature and extent of family relationships, and past and present residences; the names of

(magistrate makes release decision based on criteria); *see also* ORS 135.240 (distinguishing releasable offenses from nonreleasable offenses); ORS 135.245(3) (referring to persons having a "right to release"). Current law also requires a judge to (1) release a defendant on their own recognizance, unless the release criteria establish otherwise; (2) consider whether conditional release is warranted before considering whether security release is warranted; and (3) ultimately impose the least onerous type of release reasonably likely to ensure the safety of the public and the victim, as well as the defendant's later appearance. ORS 135.245(3) - (4). Finally, current law requires, when imposing security release, that bail be set in an amount "that will reasonably assure the defendant's appearance." ORS 135.265(1).

As summarized earlier, for persons charged with felonies and Class A misdemeanors, Part A of IP 54 would apply different requirements at arraignment. First, a judge would be required to consider a different list of criteria to determine the appropriateness of release (namely, rights established in the state and federal constitutions, and the seriousness of the new charges and of the defendant's criminal record).[5] Second, consideration of a criminal record would include all arrests and convictions outside Oregon (as practicable). Third, the judge would more simply be charged with "decid[ing] whether the \*\*\* defendant shall be released" pending trial, without sequentially considering the appropriate type of release (if any). IP 54, Part A, § 3. Finally, the judge would be "empowered to establish security \*\*\* without restrictions previously imposed by statute"—in contrast to the current requirement that a judge ordering security release must impose bail in an amount sufficient to reasonably ensure appearance at trial. *Id.* § 4.

---

persons who agree to assist the defendant in attending court; and any facts tending to indicate that the defendant has strong ties to the community.

    [5] While the criteria set out in IP 54 overlap to some extent with the primary release criteria set out in ORS 135.230(7), we note that IP 54 does not expressly mention or refer to either the criterion of any facts indicating the possibility of violations of law if the defendant were released without regulations or the criterion of any other facts tending to indicate that the defendant is likely to appear. IP 54 also does not expressly mention or refer to any of the secondary release criteria set out in ORS 135.230(11).

### B. *Parties' Arguments and Analysis*

We turn to the parties' arguments. Petitioners argue that the summary in the ballot title for IP 54 is under-inclusive and misleading because it does not fully communicate that IP 54 would "significantly re-writ[e]" Oregon's current pretrial detention and bail system. In petitioners' words, the summary "minimizes" a significant shift toward pretrial incarceration that IP 54 would effectuate, while also failing to inform voters that IP 54 would repeal current law designed to ensure consistent statewide pretrial release decision-making, based on objective and nondiscretionary risk assessment tools. Petitioners relatedly highlight particular changes that, they assert, collectively amount to the "major effect" of IP 54: new and expanded criteria that judges must consider when making release decisions at arraignment; increased judicial discretion in setting bail that would permit setting "unrestricted" amounts; and other changes that would result from moving away from the current decision-making approach.

The Attorney General disagrees. She contends that the summary tells voters that, currently, arrested persons may be released before arraignment depending on the crime charged and a risk assessment, whereas IP 54 would prohibit prearraignment release for certain crimes. And the summary tells the voters that judges have expanded authority to set bail amounts.

As noted earlier, the summary must contain a "concise and impartial statement" not exceeding 125 words that "summariz[es] the * * * measure and its major effect." ORS 250.035(2)(d). When a measure includes multiple subjects, purposes, or effects, they should be recognized to the extent permitted by the word limits. *Witt v. Kulongoski*, 319 Or 7, 10 n 3, 872 P2d 14 (1994). To identify the actual major effect (or effects) of a measure, we consider the changes that it would make, "in the context of existing law"; we then examine the disputed ballot title component—here, the summary—to determine whether it "reasonably identifies those effects." *Rasmussen v. Kroger*, 350 Or 281, 285, 253 P3d 1031 (2011). In assessing petitioners' arguments about the summary, we are mindful that its purpose is to help voters both

"understand what will happen if the measure is approved," as well as the "breadth of its impact." *Fred Meyer, Inc. v. Roberts*, 308 Or 169, 175, 777 P2d 406 (1989).

We begin with petitioners' argument that the summary does not adequately capture the breadth of the changes that IP 54 would effectuate. We agree with petitioners that, for persons arrested for felonies and Class A misdemeanors, IP 54 would create a new pretrial release framework that would replace the framework set out in current law. That potential change is a major effect of IP 54—perhaps its predominant effect. *See Rasmussen v. Kroger*, 351 Or 195, 202, 262 P3d 777 (2011) ("[a]n 'effect' that is at the heart of a proposed measure—such as a shift in the existing statutory paradigm for dealing with a subject of interest to the government and the public—qualifies as the proposed measure's 'subject matter'"). Indeed, IP 54 announces that major effect by expressly stating that it "supersedes all inconsistent provisions of Oregon law." IP 54, Part D. As an initial matter, we conclude that, to accurately convey the nature of that replacement, the summary must state that IP 54 supersedes, or overrides, current law. *See generally Mitchell v. Paulus*, 292 Or 577, 580, 640 P2d 1390 (1982) (in rejecting an argument that the words "would repeal" should be removed from a ballot title, court explained that those words were "not a statement of arguable consequences of the initiative"; rather, they were "a statement of what the initiative expressly provides").[6]

As discussed next, we also agree with petitioners that, to sufficiently convey the scope of the change that IP 54 would effectuate at arraignment, the summary must more fully describe current law and then more fully and accurately describe the comparative provisions of IP 54.

In that regard, petitioners first argue that the summary must convey that IP 54 adds to the criteria that judges are required to consider at arraignment, such as an

---

[6] Our conclusion should not be understood to mean that, whenever a proposed ballot measure would amend or repeal an existing law, the ballot title summary necessarily must include words such as "amends," "repeals," "supersedes," or "overrides." Some changes can be sufficiently summarized, and major effects sufficiently explained, without using those words.

expanded definition of a defendant's criminal record. More generally, they also contend that the summary fails to reflect the significant impact on release and bail decisions made at arraignment. And, they add, the summary does not accurately describe the provision of IP 54 that "increase[s]" judicial discretion to impose a bail amount, without any restrictions existing in current law.

We agree with petitioners that the summary is deficient in that regard as well. Notably, the summary contains no description whatsoever about the current law that governs pretrial release decisions at arraignment—namely, that the judge must consider certain criteria; must consider conditional release before considering security release; and must, if ordering security release, set a bail amount that will reasonably ensure the defendant's appearance. That omission, in turn, means that the voters would have no ability to compare current law governing pretrial release decisions made at arraignment to the new provisions proposed in IP 54, applicable to persons arrested for felonies or Class A misdemeanors. Compounding the problem, as petitioners point out, the summary provides only partial information about the provisions of IP 54 that apply to such persons at arraignment: It mentions only the judge's authority to set bail; it does not mention that IP 54 changes the criteria that the judge must consider before making a pretrial release decision. And finally, the information that it does provide— "expands judge's authority to set bail"—is confusing and could be misunderstood; that is, voters could mistakenly understand those words to mean that, under IP 54, judges would have increased authority to release persons arrested for felonies and Class A misdemeanors upon payment of bail or otherwise, when, instead, the measure expands the discretion judges have in setting bail in a way that is no longer bound by current considerations or limitations.

We conclude that the summary must provide some description to the voters about the current law that applies to pretrial release at arraignment—including the requirements to consider conditional release before security release and to set bail in an amount that will reasonably ensure appearance. Further, it must describe, accurately but within

the statutory word limit, the key changes that IP 54 would make to that law for persons arrested for felonies and Class A misdemeanors, namely, that it changes the criteria that the judge must consider and also removes current limits on setting bail amounts.[7] *See Fletchall v. Rosenblum*, 365 Or 98, 116, 442 P3d 193 (2019) (requiring modification of a summary "to make the comparison between the current and projected decisional arrangements more sensible").

## IV.   CONCLUSION

In sum, we conclude that, to substantially comply with ORS 250.035(2)(d), the summary in the ballot title for IP 54 must be modified in several respects. First, the summary must clarify that, for persons arrested for felonies and Class A misdemeanors, IP 54 would override existing law. Second, as to decision-making at arraignment, the summary must explain that (1) current law requires that conditional release be considered before security release and that bail amounts be set to ensure appearance; and (2) IP 54 would both change the criteria for making prerelease decisions and remove current limits on setting bail amounts.[8]

The ballot title is referred to the Attorney General for modification.

---

[7] We observe that, with the addition to the summary that IP 54 changes the release criteria that a court must consider, the summary by implication would sufficiently convey that current law imposes certain criteria (which would change if the voters were to approve IP 54).

Petitioners in particular emphasize one change to the release criteria—consideration of an expanded criminal record, which, under IP 54, includes all arrests and convictions outside of Oregon (to the extent practicable). To the extent that petitioners argue that the summary should include that level of detail, we disagree.

[8] To modify the ballot title in accordance with this opinion, the Attorney General could choose to use fewer words to describe other aspects of IP 54 (in particular, the current law and provision of IP 54 relating to name changes).

We have considered petitioners' other challenges to the summary in the ballot title for IP 54 and have concluded that none has merit under the "substantial compliance" standard set out in ORS 250.085(5). We therefore reject those challenges without further discussion.

# APPENDIX

## OREGON CRIMEFIGHTING ACT

The People of Oregon hereby adopt the following statute, to be known as the "Oregon Crimefighting Act." This Act improves public safety in several ways, and has three principal objectives: End the "Catch and Release" system as to those charged with felonies and Class A misdemeanors; empower counties and cities to pass ordinances to fight local crime, including public use of drugs which are illegal under federal law; require the state to pay for jail space as to those charged with felonies and Class A misdemeanors who need to be held until the trial process is complete.

**Part A.** End "Catch and Release" of criminal defendants.

Section 1. For purposes of this Part A of this Act:

a. "Serious crime" means any felony, and any Class A misdemeanor, charged in Circuit Court.

b. "Pretrial release" means a release of a criminal defendant from incarceration (usually jail) before trial.

c. "Arraignment" means an appearance in front of a Circuit Court Judge, either in person or by electronic means such as video.

Section 2. Each criminal defendant charged with a serious crime shall not be eligible for pretrial release from incarceration until the criminal defendant is presented for arraignment.

Section 3. When a criminal defendant charged with a serious crime appears at arraignment, the Circuit Court Judge presiding at the arraignment shall review the criminal defendant's record, and the charges pending against the criminal defendant, and the Judge shall decide whether the criminal defendant shall be released from incarceration pending trial. In making this decision, the judge shall consider:

a. Rights established in the Constitution of the United States.

b. Rights established in the Constitution of Oregon; these include but are not limited to the provisions of Article I,

Section 43 of the Oregon Constitution which provide the right of a crime victim to be reasonably protected from the criminal defendant throughout the criminal justice process and the right of the public and the victim to have decisions regarding the pretrial release of a criminal defendant be based upon the principle of reasonable protection of the victim and the public, as well as the likelihood that the criminal defendant will appear for trial.

c.  The seriousness of the criminal defendant's criminal record and the seriousness of the new charges against the criminal defendant. The defendant's criminal record shall include all arrests and convictions, and all citations in lieu of arrest, in Oregon. The criminal record shall also include, to the extent practicable, all arrests and convictions outside Oregon.

Section 4. The Circuit Court Judge is empowered to establish security as to the appearance of the criminal defendant for trial, without restrictions previously imposed by statute, as to any serious crime.

Section 5. As to any person arrested for any felony or any Class A misdemeanor charged in any Oregon Circuit Court, Municipal Court, or Justice Court, all Oregon State or local government agencies shall cooperate with and comply with any custodial hold or order associated with such person. This includes any custodial hold or order from any other state or territory, any federal agency, any other Oregon county, and any tribal agency. Each Oregon state or local government agency shall, when appropriate, transfer such arrested person to the custody of the jurisdiction presenting the custodial hold or order.

Section 6. In order to prevent certain convicted criminals from hiding their identity, the state shall not approve, facilitate, or recognize any name change for any person convicted of any felony sex crime, assault in the first degree, or any degree of murder. This restriction applies as to any conviction for a crime in any jurisdiction within the United States where the crime is substantially similar to any of the listed Oregon crimes. This restriction may only be set aside by an Oregon court which finds extraordinary circumstances which justify a name change.

**Part B.** Allow local governments to better protect public safety.

<u>Section 1</u>. Notwithstanding any other provision of state law, local governments have the power to criminally prohibit or restrict the following:

    a.   Public intoxication as to alcohol or drugs.

    b.   Public drinking of alcohol.

    c.   Public use of any drug which is illegal under federal law.

    d.   Disorderly conduct.

    e.   Trespassing on public property.

<u>Section 2</u>. The powers listed in Section 1 of Part B are in addition to any power which may be held by a unit of local government.

**Part C.** Ensure sufficient jail space and funding for each jail.

<u>Section 1</u>. The state shall reimburse each county for the costs of pretrial incarceration of all persons charged with felonies or Class A misdemeanors. The reimbursement shall cover the costs of incarceration for each day that a person charged with a felony or Class A misdemeanor is in in the custody of the supervisory authority of the county, from the date of the person's arrest until the resolution of the criminal charge.

<u>Section 2</u>. Every month, the county shall submit to the Oregon Department of Corrections a written request for reimbursement for the cost of incarcerating persons described in Section 1 of this Part C.

<u>Section 3</u>. The Department of Corrections shall reimburse a county that submits a request under Section 2 of this Part C within 30 days of receiving the request. The reimbursement shall occur at the rate of $145 per person per day of incarceration or the actual daily cost of incarcerating a person, whichever is higher.

<u>Section 4</u>. If the Department of Corrections determines that the reimbursement request by a county under Part C

is excessive, the issue shall be immediately submitted for consideration and resolution by the Circuit Court of that county. The decision of the Circuit Court as to the amount to be reimbursed shall be final and not subject to appeal.

Section 5. If any county jail exceeds 90% of its capacity for 30 days or more, the supervisory authority for the county shall report this to the Department of Corrections, which shall provide incarceration facilities, staffed by Department of Corrections personnel, to house inmates from that county, at state expense. This shall continue until the supervisory authority confirms that the capacity problem has been resolved.

Section 6. None of the reimbursement or housing of inmates provisions of Part C of this Act may be set off by any other funding obligations of the state to any county.

**Part D.** This Oregon Crimefighting Act supersedes all inconsistent provisions of Oregon law.

**Part E.** This Act is effective upon passage. The provisions of this Act apply to crimes committed on or after January 1, 2025.